IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARGIE CARTER** <br><br> v. <br><br> **ANGELS OF CARE, LLC & EDISON RAPI** | **CIVIL ACTION** <br><br> **NO. 24-790** |

**MEMORANDUM RE: PARTIAL MOTION TO DISMISS**

**Baylson, J.**                                                                                                              **July 16, 2024**

Named Plaintiff Margie Carter (hereafter "Plaintiff") brings individual claims and claims on behalf of herself and those who are similarly situated against Defendants, Angels of Care, LLC and owner Edison Rapi, the plaintiffs' employer (hereafter "Defendants"). Plaintiff asserts that Defendants violated the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("PWPCL"), the Pennsylvania Whistleblower Law ("PWL"), and the Fair Labor Standards Act ("FLSA") by failing to compensate her according to their agreed upon wage, refusing to compensate appropriately for overtime hours, and terminating her after complaining about her wages. Presently before this Court is Defendants' motion to dismiss Counts IV and V of Plaintiff's Second Amended Complaint. For the reasons explained below, Defendants' Partial Motion to Dismiss is **DENIED**.

I.  **FACTUAL BACKGROUND**

As alleged in Plaintiff's Second Amended Complaint, ECF 9, the relevant facts are as follows. Plaintiff began working for Defendants as a caregiver in April 2022. ECF 9 at ¶ 29. Defendant Angels of Care, LLC (hereafter "Angels of Care") is owned and managed by Defendant Edison Rapi. Id. at ¶ 7. Defendant Angels of Care is a company operating in Pennsylvania. Id. at ¶ 6. Defendants received funding from the Commonwealth of Pennsylvania via the 2020 Act 24

and the 2022 Act 54, which were enacted by the Pennsylvania General Assembly and executed by the Governor. Id. at ¶ 28.

Defendants agreed to pay Plaintiff an hourly rate of $15.00 per hour. Id. at ¶ 31. Plaintiff alleges that she regularly worked more than 40 hours per week but was never properly compensated one and one-half times her regular rate for the additional hours. Id. at ¶¶ 32-34. Three months into her employment, Plaintiff complained to Defendant Edison Rapi that she was not receiving proper overtime wages. Id. at ¶ 42. Defendant responded by paying Plaintiff an "overtime" rate of $19.00 per overtime hour and lowering Plaintiff's regular rate to $14.00 per hour. Id. at ¶¶ 43-44.

Around September 2022, Plaintiff complained again to Defendant that she was being improperly compensated. Id. at ¶ 45. Defendant told Plaintiff that he could not pay her the proper wage because of the company's poor financial situation. Id. at ¶ 46. Plaintiff continued to complain about receiving an improper base and overtime wage that was below the agreed upon rate. Id. at ¶ 47.

Plaintiff's final complaint came on or around June 22, 2023, and was made to Defendant Edison Rapi's wife. Id. at ¶¶ 48-49. Defendant Rapi's wife worked as a coordinator for Defendants. Id. at ¶ 49. Upon hearing Plaintiff's repeated complaint about her compensation, Defendant Rapi's wife informed Plaintiff that she was welcome to quit her position with Defendants if she were dissatisfied. Id. at ¶ 51. Plaintiff told Defendant Rapi's wife that she wanted to continue working for Defendants. Id.

On or around the same day, Defendant Rapi informed Plaintiff that she had been fired from her position. Id. at ¶ 53. The letter of termination was dated June 22, 2023 and made clear that

2

Plaintiff was relieved of her duties as an employee of Defendants starting on June 24, 2023. Id.[1]

Plaintiff alleges that she was fired in retaliation for her repeated complaints that Defendants were violating overtime laws and failing to pay her the promised rate. Id. at ¶ 54. Plaintiff claims that other Plaintiffs, estimated to be more than forty employees, are likewise situated, and suffered similar injuries from Defendants' unlawful actions. Id. at ¶¶ 14-15.

## II.   PROCEDURAL HISTORY

Plaintiff initiated a lawsuit against Defendants Angels of Care and Edward Rapi on December 19, 2023. ECF 1 at ¶ 1.

On February 22, 2024, Defendants removed Plaintiff's lawsuit from the Court of Common Pleas of Montgomery County, Pennsylvania to this Court. Id. at ¶¶ 5-11. Defendants filed a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim on February 29, 2024. ECF 6. Plaintiff amended her Complaint and Defendants subsequently filed a Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim on March 27, 2023. ECF 7. This Court granted leave to amend pleadings in a pretrial order on April 1, 2024. ECF 8.[2]

On April 9, 2024, Plaintiff filed her Second Amended Complaint in this Court, asserting:

(1) violations of the Pennsylvania Minimum Wage Act (Count I),

(2) violations of the Pennsylvania Wage Payment and Collection Law (Count II),

---

[1] Plaintiff mistakenly alleges in the Amended Complaint that Plaintiff worked for Defendants until June 24, 2022. ECF 9 at ¶ 29. The Court will disregard this error for purposes of the pending Motion to Dismiss since it is clear from the surrounding allegations that Plaintiff meant June 24, 2023. This error is made clear when Plaintiff references employment matters subsequent to June 24, 2022, including the Plaintiff's final complaint on June 22, 2023, and that the date of Plaintiff's termination on June 24, 2023. Id. at ¶¶ 48-53. However, this Court will require Plaintiff to amend the Complaint to correct this error.

[2] In its April 1, 2024 Pretrial Order, this Court consolidated Civil Action 24-790 (brought as an individual action) and Civil Action 24-791 (brought as a collective and/or class action), dismissing Civil Action 24-791 as moot.

(3) violations of the Fair Labor Standards Act regarding failure to pay overtime compensation (Count III),

(4) violations of the Pennsylvania Whistleblower Law (Count IV), and

(5) violations of the Fair Labor Standards Act regarding wrongful termination/retaliation (Count V).

ECF 9.  Plaintiff brought Counts I—III on behalf of herself and all of those similarly situated. Id. at ¶ 2.  Counts IV and V apply only to Plaintiff's own alleged wrongful and retaliatory termination.  Id. at ¶ 3.

On April 18, 2024, Defendants filed the instant Partial Motion to Dismiss Count IV and Count V of Plaintiff's complaint.  ECF 11-1.  Plaintiff responded on May 2, 2024.  ECF 13. Defendants filed a Reply on May 9, 2024.  ECF 15.

### III.     LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," and thus will not suffice if it is "devoid of further factual enhancement," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555).  Accordingly, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that [she] has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. at 519, 526 (1983)).

IV.     PARTY CONTENTIONS

   A. **Defendants' Motion**

Defendants raise two arguments in support of dismissing Plaintiff's PWL claim (Count IV). First, Defendants argue that Plaintiff cannot assert a claim for relief under the PWL because she cannot establish that Defendants were "public bodies" or "employers" subject to the PWL. ECF 11-1 at 9. While acknowledging that Plaintiff alleges that Defendant Angels of Care receives "funds from the Commonwealth of Pennsylvania, including but not limited to funds received through 2020 Act 24 and 2022 Act 54," Defendant argues that the 2020 Act 24 and 2022 Act 54 relate to federal funds rather than funds from the Commonwealth and under the plain language of the PWL, the funds must come from the Commonwealth or political subdivision authority, not a federal source. Id. at 9. Therefore, Defendants argue that Plaintiff cannot establish that Defendant Angels of Care is a public body under the PWL. Id. at 9-10. Defendants also state that Plaintiff fails to establish that either Defendant is an employer subject to the PWL because "nowhere…does she allege that Defendants received funds from a public body or any other type of entity contemplated by the statute" so as to qualify as an employer. Id. at 10. Defendants further argue that even if Plaintiff were to succeed in her classification of Defendants as employers under the PWL, she fails to allege that Defendants committed "waste" as defined in the statute. Id.

Second, Defendants claim that Plaintiff fails to establish a causal connection between her complaints and the alleged retaliation. Id. at 9. Defendants argue that Plaintiff fails to allege any facts that show it was her complaints about overtime pay which led to her termination, as opposed to other, unrelated factors. Id. at 12. Further, Defendants maintain that Plaintiff fails to establish the necessary temporal proximity between her complaints and her termination. Id. In support of their position, Defendants argue that (1) Plaintiff's last alleged complaint to Defendant Rapi

5

occurred one year prior to her firing, which is too temporally remote, and 2) a complaint to Defendant Rapi's wife does not constitute a complaint to Defendants because Plaintiff failed to properly claim that Defendant Rapi's wife is tasked with employment decisions or Defendant Rapi was aware of the Plaintiff's complaint. Id. at 13-14.

Defendants raise essentially the same causation argument from the PWL claim in support of their motion to dismiss the Plaintiff's FLSA claim (Count V). Similar to their argument in favor of dismissing the PWL claim, Defendants argue that Plaintiff failed to allege sufficient facts to conclude that it was her complaint about wages which led to her termination and that there existed "any meaningful temporal proximity between the date of her last alleged complaint and her termination, or even…the existence of a pattern of antagonism." Id. at 16. Defendants also contend that Plaintiff bears the burden of establishing "that she was 'engaged in commerce or in the production of commerce,' or had been 'employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.'" Id. at 15 (quoting 29 U.S.C. §207(a)(1)).

### B. Plaintiff's Response

With respect to Defendants' public body argument, Plaintiff argues that she has adequately pled that Defendant Angels of Care is a public body under the PWL. Plaintiff highlights the ongoing dispute among courts as to whether entities receiving federal funds administered by the Commonwealth meet the definition of public bodies under the PWL. ECF 13 at 4. Plaintiff contends that it is this Court's obligation to predict how the Pennsylvania Supreme Court would address this issue since it has not yet been squarely addressed by the Pennsylvania Supreme Court. Id. Plaintiff argues that this Court should follow a line of cases, all involving Medicaid reimbursement payments, which hold that funds from a federal source provided by the

Commonwealth are sufficient to qualify an entity as a "public body" under the PWL. Id. at 5. Plaintiff asks this Court to reject a separate line of federal court cases, arguing that the persuasive value of these cases is undermined by the fact that the courts did not examine the plain meaning of the PWL's text pursuant to Pennsylvania's Statutory Construction Act ("SCA") and because the specific nature of Medicaid payments, which merely pass through the Commonwealth rather than result from a specific appropriation, provide the "basis for concluding Medicaid funds cannot make an entity a 'public body.'" Id. at 6-7.

As for lack of causation for the PWL claim, Plaintiff argues that "adverse action that is 'unusually suggestive' is sufficient alone to create an inference of causality and defeat summary judgment," and that here, Plaintiff was terminated on the same day as her final complaint to Defendant Rapi's wife. Id. at 8.  Plaintiff raises two points with respect to her final complaint about wages to Defendant Rapi's wife: 1) that a significant relationship between two individuals can establish shared knowledge and 2) that a reasonable jury could find it to be more probable than not that Defendant Rapi's wife was a "close personal advisor of the decisionmaker." Id. at 9. Plaintiff also contends that a reasonable jury could find that Defendant Rapi's wife was involved in the decision-making process due to her position as Coordinator for Defendants and her comments to Plaintiff that she may resign if dissatisfied. Id. at 10.

Plaintiff raises the same causation argument immediately above with respect to Defendant's motion to dismiss the FLSA claim (Count V). Id. at 11.  Plaintiff does not address whether she or Defendants engaged in interstate commerce. Id.

### C.  Defendants' Reply

In their reply, Defendants argue that Defendants are not public bodies under the PWL and that Plaintiff's case law cites in opposition are "factually distinguishable from the present action."

7

ECF 15 at 4. Defendants argue that Plaintiff's citations to caselaw finding that Medicare or Medicaid distributions are evidence that a receiving entity is a public body under the PWL are irrelevant to the present case. Id. Ultimately, Defendants assert that Plaintiff fails to state a claim for relief under the PWL because she alleges facts that only connect Defendants to federal funding, and not funding from the Commonwealth. Id. at 5.

With respect to the causation argument, Defendants reassert that Plaintiff fails to "establish that the decisionmaker responsible for the alleged adverse action actually knew about her protected conduct or complaints" in a reasonable amount of time (under three months) that would uphold an inference of temporal proximity. Id. at 6. Defendants assert that Defendant Rapi was last informed of any complaint from Plaintiff in September of 2022, almost an entire year prior to Plaintiff's firing, and that Plaintiff fails to allege any facts that would support an inference of transferred knowledge between Defendant Rapi and his wife. Id. at 7.

With respect to the FLSA claim (Count V), Defendants reassert their argument that Plaintiff must do more than merely offer "vague and conclusory allegations" to entitle her to relief. Id. at 9. Defendants identify Plaintiff's allegation that Defendants are engaged in commerce within the meaning of the FLSA as "conclusory." Id. at 1.

## V.  DISCUSSION

### A. Plaintiff Plausibly Alleges a PWL Violation

The Pennsylvania Whistleblower Law ("PWL") establishes, in pertinent part, that employers cannot "discharge…or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee…makes a good faith report…to the employer or appropriate authority [of] an instance of wrongdoing…." 43 Pa. Stat. Ann. §1423(a). The statute defines "employer" as any "public

body," which includes "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority…." 43 Pa. Stat. Ann. §1422. The PWL is designed to ensure "that employees are not discouraged from reporting violations of legal or ethical codes" to their employers or other authorities. O'Rourke v. Commonwealth, 778 A.2d 1194, 1202 (Pa. 2001).

To survive a motion to dismiss on a PWL violation, Plaintiff must allege that she made a report of "wrongdoing" to Defendants and that Defendants qualify as a "public body under the Act." Chiancone v. Bayada Home Health Care, Inc., 2022 WL 1185892, at *5-6 (E.D. Pa. April 21, 2022). Alternatively, Plaintiff could survive a motion to dismiss by claiming that Defendants qualify as an employer performing work or services for a public body under the types of employers enumerated in the PWL; however, she would then only be able to establish a claim by alleging that she reported "waste." Id. at *5. Plaintiff must also "plead facts or surrounding circumstances that support an inference" that her report to Defendants regarding improper compensation resulted in her termination. Bennet v. Republic Servs. Inc., 179 F. Supp. 3d 451, 456 (E.D. Pa. 2016) (citing Golashevsky v. Commonwealth, 554 Pa. 157, 162-63 (1998)).

Here, Plaintiff alleges that Defendant Angels of Care is a "public body" as defined by the PWL because the entity was the recipient of funding from the Pennsylvania 2020 Act 24 and 2022 Act 54.[3] ECF 9 at ¶ 28. Both of these Acts involve the appropriation of federal funds administered under the direction of the Commonwealth of Pennsylvania. See Pa. Act 24 of 2020; see also Pa. Act 54 of 2022. Defendants' motion turns on whether this form of funding establishes that Defendants are "public entities" under the PWL and whether the Plaintiff's Second Amended

---

[3] Plaintiff makes no allegations of "waste." ECF 9. Therefore, Plaintiff's PWL claim relies solely on whether Defendant Angels of Care qualifies as a "public body." Defendant Edison Rapi cannot be considered a public body in his individual capacity.

9

Complaint includes facts or surrounding circumstances that plausibly connect Plaintiff's complaints to her termination.

      i.    <u>Defendant Angels of Care is a Public Body Under the PWL</u>

The Supreme Court of Pennsylvania has yet to determine whether entities are considered a "public body" under the PWL when they receive federal funding that passes through the Commonwealth's administration.[4] Without precedent available from the Commonwealth's highest court, it becomes the duty of this Court to predict how the Supreme Court of Pennsylvania would decide this issue of state law. See <u>Winterberg v. Transportation Ins. Co.</u>, 72 F.3d 318, 321-22 (3d Cir. 1995) ("[i]n the absence of any precedent of the Pennsylvania Supreme Court, we must predict how that court would decide this issue"). "In predicting how a matter would be decided under state law we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 406 (3d Cir. 2000).

The parties dispute whether federal funding administered by the Commonwealth qualifies Defendant Angels of Care as being "funded in any amount by or through [the] Commonwealth," which is the key factor determining whether Defendant Angel of Care is a public body under the PWL. ECF 11-1 at 10; ECF 13 at 5; ECF 15 at 3-4. Defendants' position relies on older caselaw,

---

[4] The Supreme Court of Pennsylvania in <u>Harrison v. Health Network Labs. Ltd. Partnerships</u> noted that neither party disputed the fact that defendant was a public body under the PWL because it received federal funding from Medicare and Medicaid receipts, but this limited dictum has not proven instructive in determining how the Commonwealth's highest court would rule on this issue and others like it because the court offered no ruling or legal analysis. See <u>Gloukhova v. CSL Behring LLC</u>, 2022 WL 16722314, at *3 (E.D. Pa. Nov. 4, 2022) ("Here, given that the <u>Harrison</u> court did not—because it was not asked to— provide any analysis of whether receipt of Medicare and Medicaid funds renders an entity an employer within the meaning of the PWL, the footnote provides minimal insight into how the Supreme Court of Pennsylvania might rule if presented with the question directly.").

which found that Medicaid funding on its own is insufficient for an entity to be deemed a public body and potentially liable under the PWL. See Cohen v. Salick Health Care, Inc., 772 F. Supp. 1521, 1527 (E.D. Pa. 1991) (opining that "[i]t is abundantly clear that the legislature did not intend that the mere receipt of monies from a state source for services rendered should bring the recipient within the Whistleblower Law"); see also Dorsey v. Merakey USA, 2019 WL 2016261, at *3 (E.D. Pa. May 6, 2019) (finding that funding must originate from the Commonwealth and not from a federal source to bring an entity within the purview of the PWL). By contrast, Plaintiff's position is supported by this District's most recent decision on the topic, which benefits from (1) amendments to the PWL that occurred after the Cohen decision and (2) a sequence of consistent intermediate Pennsylvania appellate court decisions. See Gloukhova v. CSL Behring LLC, 2022 WL 16722314, at *4-6 (E.D. Pa. Nov. 4, 2022) (citing Denton v. Silver Stream Nursing & Rehab. Ctr., 739 A.2d 571, 575-577 (Pa. Super. 1999)) (declining to follow the Cohen approach in favor of "the plain meaning" of the statute, suggesting that any entity which receives federal funding through the administration of the Commonwealth, such as Medicaid receipts, becomes a public body under the PWL).

The court's reasoning in Gloukhova is persuasive. In Gloukhova, the Court found that the proper interpretative method is to adhere to the text of the statute and its plain meaning. Gloukhova, 2022 WL 16722314 at *4. The court concluded that the PWL's language "by or through" includes Medicaid funding that passes through the Commonwealth to eligible entities. Id. at *4-6. This interpretation is supported by decisions from the Pennsylvania Superior Court. See Denton, 739 A.2d at 576 ("[t]he [PWL] clearly indicates that it is intended to be applied to bodies that receive not only money appropriated by the Commonwealth, but also public money that passes through the Commonwealth"); Saltzman v. Thomas Jefferson Univ. Hosps., Inc., 166

11

A.3d 465, 475 n.8 (Pa. Super. 2017) (noting that because the defendant receives funding from Medicaid it falls under the scope of the PWL as a public body). The Gloukhova court effectively undermines the precedential value of Cohen and its progeny by noting that 1) Cohen's reasoning partially depended on the fact that no relevant Pennsylvania appellate court decision existed prior to 1991, 2) the Pennsylvania Superior Court rejects Cohen, 3) Cohen errs in its interpretive approach under the Pennsylvania's Statutory Construction Act of 1972, and 4) Cohen refers to an outdated version of the PWL which does not include 2014 alterations to the definition of "employer."[5] Gloukhova, 2022 WL 16722314 at *4-6. Courts in this district have since determined that Gloukhova provides an exhaustive summary of this issue and an accurate prediction of a ruling from the Supreme Court of Pennsylvania. See Smith v. Ideal Concepts, Inc., 2023 WL 8188446, at *5-6 (E.D. Pa. Nov. 27, 2023) (reaffirming the Gloukhova court's reasoning as persuasive and labeling the case "a broad survey of intermediate Pennsylvania Court and Federal District Court approaches").

Here, the Pennsylvania 2020 Act 24 and 2022 Act 54 include federal funding that passed through and was distributed by the Commonwealth of Pennsylvania to Defendant Angels of Care. Although this case does not specifically concern Medicaid payments, the analysis and reasoning in the cases discussed above apply here. For this reason, this Court finds that Defendant Angels

---

[5] "[T]he Cohen court bases its interpretation of the language of a since amended version of the PWL—which defined an employer as '[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body.' 43 Pa. Const. Stat. § 1422 (amended 2014)—which was later changed by a 2014 amendment—now defining an employer as a public body 'or [an individual, partnership, association, corporation for profit, or a corporation not for profit] which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[.]' 43 Pa. Const. Stat. § 1422." Gloukhova, 2022 WL 16722314 at *5.

of Care is a "public body" under the PWL, and Plaintiff's PWL claim will not be dismissed on this basis.[6]

        ii.    <u>Plaintiff Pled a Plausible Causal Connection Between Her Complaint and Her Termination</u>

For Plaintiff to recover damages for a PWL claim, she must plead facts or surrounding circumstances that show: "(1) [she] reported an instance of wrongdoing or waste to an appropriate authority; and (2) there is a causal connection between the report and the alleged retaliation." <u>Frazier v. City of Phila.</u>, 441 F. Supp. 3d 76, 96 (E.D. Pa. 2020). Plaintiff cannot establish causation without purporting facts that show Defendant Rapi was aware of the complaint which led to her termination. See <u>Daniels v. Sch. Dist. of Phila.</u>, 776 F. 3d 181, 196 (3d Cir. 2015) (determining that a plaintiff cannot "establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted"). When determining whether a plaintiff has pled a sufficient causal connection between her complaint and an employer's retaliatory action, the Third Circuit typically requires plaintiffs to show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Budhun v. Reading Hosp. and Medical Ctr.</u>, 765 F.3d 245, 258 (3d Cir. 2014) (quoting <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir.2007)).

Defendants claim that Plaintiff failed to plead sufficient facts for temporal proximity because Plaintiff's final complaint to Defendant Rapi's wife neither qualifies as a proper report to a decision-making authority nor establishes that Defendant Rapi had knowledge of the final complaint. ECF 11-1 at 13. Defendants are mistaken. Independent from the factual allegation

---

[6] Because this Court has found that Defendant Angels of Care is a "public body" under the PWL, the Court need not address whether either Defendant otherwise classifies as "an employer" under the meaning of the PWL.

13

that Defendant Rapi's wife informed Defendant Rapi of Plaintiff's complaint about wages, the professional and personal relationship between Defendant Rapi and his wife and the fact that Plaintiff's letter of termination was dated the same date as her final complaint is unusually suggestive, and therefore sufficient to establish causation at the motion to dismiss stage.  See Sawa v. RDG-GCS Joint Ventures III, 2017 WL 3033996, at *13 (E.D. Pa. July 14, 2017) (citing Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)) ("[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality….temporal proximity alone, when 'very close,' can in some instances establish a prima facie case of retaliation").[7]  Further, Plaintiff's final complaint was one of a series that were made primarily to Defendant Rapi over the course of her employment.  ECF 9 at ¶ 42-53.

Further, Plaintiff alleges that she received notice of her termination on the exact date of her final complaint to Defendant Rapi's wife, who is employed by Defendant Rapi and holds the title of "Coordinator."  ECF 9 at ¶ 48-53.  Importantly, Plaintiff also claims that Defendant Rapi's wife informed Plaintiff that she "could leave if she was dissatisfied."  Id. at ¶ 51.  Under these circumstances, one could conclude that the relationship between Defendant Rapi and Defendant Rapi's wife makes it more probable than not that Defendant Rapi was informed of the final complaint from Plaintiff.  See Kacian v. Postmaster Gen. of the United States, 653 F. App'x 125, 130 (3d Cir. 2016) (finding that knowledge of a complaint can be inferred when the complaint is made both about the decision-maker and to an "individual with unique access to the events at issue"); see also Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 973 (3d Cir. 1997) (determining that

---

[7] Defendants do not contest that same-day timing is unusually suggestive, but rather focus on their argument that Plaintiff failed to establish that Defendant Rapi was informed of the complaint by Plaintiff on the date of her termination or that Defendant Rapi's wife was "anyone with any decision-making authority."  ECF 11-1 at 16.

14

if a close personal advisor to the decision-maker is aware of a complaint then it may be found to be more probable than not that the decision-maker was notified shortly after).

Plaintiff has successfully pled enough factual allegations to establish the necessary causal connection between her final complaint (the last of many) to Defendant Rapi's wife and her termination that very same day.

Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's PWL claim (Count IV).

### B. Plaintiff Plausibly Alleges a FLSA Violation

The Court reaches the same conclusion regarding causation for Plaintiff's FLSA claim. To establish a prima facie case of discriminatory retaliation under the FLSA, Plaintiff "must show that (1) [she] engaged in protected activity, (2) the employer took an adverse employment action against [her], and (3) there was a causal link between [her] protected action and the employer's adverse action." Kovach v. Turner Dairy Farms, Inc. 929 F. Supp. 2d 477, 499 (W.D. Pa. 2013) (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) and Preobrazhenskaya v. Mercy Hall Infirmary, 71 F. App'x. 936, 939 (3d Cir. 2003)). Temporal proximity between the employee's protected action and the employer's adverse action, as well as a lack of evidence to suggests that outside factors were relevant in the employment decision, are paramount for a plaintiff's FLSA claim. Id. "To establish a causal link or causation in a FLSA retaliation claim, the Third Circuit allows plaintiffs to present a broad array of evidence." Spells v. Physician and Tactical Healthcare Servs., LLC, 615 F. Supp. 3d 230, 250 (D.N.J. 2022) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)).

The parties do not dispute that Plaintiff engaged in (1) a protected activity by complaining about improper wage payments and (2) that Defendant's terminated Plaintiff's employment. ECF

15

11-1; ECF 13; ECF 15. The parties do however dispute whether Plaintiff has established the third element of her prima facie case for wrongful termination under the FLSA: causation. Id.

Similar to the causation argument discussed above in the context of Plaintiff's PWL claim, Defendants argue, with respect to Plaintiff's FLSA claim, that Plaintiff fails to "establish the requisite causal link between her termination and any complaints about overtime that she claims to have made to Rapi and/or his wife." ECF 11-1 at 15. Defendants are again mistaken in dismissing the significance of Plaintiff's wage related complaint to Defendant Rapi's wife.

Under the FLSA, informal complaints to an employer regarding wages may qualify as protected action. See Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 814-15 (E.D. Pa. 2015) (discussing the Third Circuit's approach to informal complaints under the FLSA). Unusually suggestive temporal proximity between the employee's complaint and the employer's adverse action can be enough on its own to establish causation. Holt v. Pennsylvania, 683 F. App'x 151, 157 (3d Cir. 2017); see also Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (deciding that two days between an EEOC complaint and a firing was enough to establish causation). Plaintiff must also make some showing that Defendants had knowledge of the complaint before engaging in the adverse action. Moore v. City of Phila., 461 F.3d 331, 351 (3d Cir. 2006).

Given that Plaintiff had complained to Defendant Rapi on numerous occasions before her final complaint to Defendant Rapi's wife and that Defendant Rapi's wife both works for Defendant Rapi and is his spouse, Plaintiff alleges sufficient factual allegations to suggest that Defendant Rapi terminated Plaintiff in retaliation for her final wage complaint.

Lastly, for Plaintiff to succeed on her FLSA claim, she must establish that she is engaged in interstate commerce or that she is employed by an "enterprise" engaged in commerce or the production of goods for commerce. See 29 U.S.C. § 207(a)(1); see also SeYoung Ra v. Gerhard's,

16

Inc., 2019 WL 95473, at *4 (E.D. Pa. Jan. 3, 2019) (noting that the FLSA covers employees who either (1) are "engaged in commerce or in the production of goods for commerce" or (2) are "employed in an enterprise engaged in commerce or the production of goods for commerce"). Here, Plaintiff alleges that Defendants are an "enterprise" that is engaged in commerce under the meaning of the FLSA. ECF 9 at ¶ 8. Plaintiff also alleges facts regarding Defendants' employment practices, Defendants' involvement with goods that travel in interstate commerce, and that Defendants' gross annual sales or business made is $500,000 or more. Id. at ¶¶ 9-10. These allegations are sufficient for Plaintiff's FLSA claim to survive at the motion to dismiss stage. See Zebroski v. Gouak, 2009 WL 2950813, at *1 (E.D. Pa. Sept. 9, 2009) (determining that an allegation that a defendant is an "enterprise engaged in commerce…whose annual gross volume of sales made or business done is not less than $500,000" is sufficient at the motion to dismiss stage for an FLSA claim).

Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's FLSA claim (Count V).

## VI. CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Counts IV and V is **DENIED**. An appropriate Order follows.